IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**LAWRENCE EDWARD BROWN,**

      **Petitioner,**

v.                                              Case No. 5:22-cv-00506

**WARDEN, FCI BECKLEY,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner Lawrence Edward Brown's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1), and a motion to dismiss contained in the Warden's Response. (ECF No. 9). This case is assigned to the Honorable Frank W. Volk, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED**, Respondent's request for dismissal be **GRANTED**, and this action be **DISMISSED** and removed from the docket of the Court.

**I.    Relevant History**

Lawrence Brown is a federal inmate currently housed at FCI Beckley in Beckley, West Virginia, with a projected release date of May 23, 2024. Federal Bureau of Prisons,

Inmate Locator, www.bop.gov/inmateloc/. In August 1987, Brown was convicted of multiple bank robberies and sentenced to 30 years' imprisonment by the United States District Court for the Middle District of North Carolina. (ECF Nos. 1, 9). In June 1997, he was paroled and released on a North Carolina state detainer for the same bank robberies underlying his federal convictions, with 7,305 days remaining on his federal sentence. (ECF No. 1). He was released from state custody after 17 months, and, in 2000, he was again arrested for bank robbery. (*Id*. at 1). He was convicted of committing eleven bank robberies and sentenced to 235 months by the Middle District of North Carolina. (ECF No. 9 at 1–2). Because he had been on federal parole at the time of the bank robberies in 2000, the United States Parole Commission ("Commission") issued a parole violator warrant in 2001. (*Id*. at 1). His parole violation hearing took place in 2017, after completion of the new 235-month sentence. (*Id*. at 2). The parole hearing examiner calculated his reparole sentencing guidelines range as 78–100 months, but, due to the similarity of Brown's crimes, the examiner recommended a violator sentence of 216 months, with all time on parole forfeited. (*Id*.); *Brown v. U.S. Parole Comm'n*, No. CV 6:18-905-HMH-KFM, 2018 WL 5624160, at *4 (D.S.C. Oct. 3, 2018)[1]. A second hearing examiner reviewed Brown's case, and finding that he was at high risk of recidivism if released, recommended a longer sentence of 300 months. (ECF No. 9 at 2). The Commission ultimately imposed a violator sentence of 300 months. (*Id*.).

Brown previously filed a habeas petition challenging his parole violator sentence on different grounds. *Brown*, 2018 WL 5624160. Brown brought the instant habeas

---

[1] A court may take judicial notice of the records of other courts. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989), citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

petition on November 1, 2022, arguing that the Commission's jurisdiction has lapsed, that his parole violator sentence is unreasonable and unlawful, and that he is entitled to compassionate release under the First Step Act. (ECF No. 1). The Warden filed a Response, arguing that the Commission retains jurisdiction over Brown, that his violator sentence is lawful, and that, as an "old law" federal prisoner, the First Step Act's compassionate release provisions do not apply to him. (ECF No. 9). Brown filed a reply, reiterating the arguments made in his petition. (ECF No. 12).

## II. Standard of Review

Respondent requests that this Court dismiss Petitioner's § 2241 petition but does not identify the Rule of Civil Procedure that governs his motion. Because Respondent filed a Response concurrently with the motion to dismiss, the motion technically is one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion to dismiss under Rule 12(c) applies the same standard of review as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12 (b)(6), and both motions may be filed in habeas actions. *Id*. at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523,

3

529 (4th Cir. 2006)). A court presented with a Rule 12(c) motion in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, without converting the motion into one for summary judgment. *Id*. The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the [petition] and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

Brown advances several arguments for his release. He claims that the jurisdiction of the United States Parole Commission has lapsed, giving this Court jurisdiction over his parole. (ECF No. 1 at 2). He further argues that the parole violator sentence of 300 months was unreasonable, arbitrary, capricious, irrational, and in excess of statutory authority. (*Id.*). Additionally, he believes he is entitled to compassionate release in accordance with the First Step Act. (*Id.*).

#### A. *Jurisdiction of Parole Commission*

The Sentencing Reform Act of 1984 abolished federal parole, effective on November 1, 1987. *See* 18 U.S.C. 3551 note; Public Law 98–473; 98 Stat. 2032. The authority of the United States Parole Commission was extended for five years beyond the effective date of the Act, until November 1, 1992, to retain jurisdiction over those prisoners who had been sentenced before parole was abolished. *Id.* Congress has repeatedly extended the Parole Commission's authority in multi-year increments. *See* 18 U.S.C. § 4201 note (summarizing history of laws extending the USPC's authority). On October 1, 2020, the Appropriations Act of 2021 extended the Commission's authority

until November 1, 2022, 18 U.S.C. § 3551 note; Pub. L. No. 116-159, 134 Stat 709. If this were the last timely extension of the Commission's authority, Brown would be correct that the Commission's jurisdiction had lapsed. However, before the November 1, 2022 expiration date, Congress extended the Commission's authority by another 46 days, until December 17, 2022. *See* Continuing Appropriations and Ukraine Supplemental Appropriations Act 2023, 18 U.S.C. § 3551 note; Pub. L. No. 117-180; 136 Stat 2114. Congress then timely passed two additional short-term extensions, first to December 24, 2022, and then to December 31, 2022. *See* Further Continuing Appropriations Act of 2023, 18 U.S.C. § 3551 note; Pub. L. No. 117-229; 136 Stat 2308; Further Additional Continuing Appropriations and Extensions Act 2023, Pub. L. No. 117-264, 136 Stat. 4167. Most recently, on December 29, 2022, Congress extended the Parole Commission's authority until November 1, 2023. *See* United States Parole Commission Additional Extension Act of 2022, 18 U.S.C. § 3551 note, Pub. L. No. 117-328, 136 Stat 4459. Each extension was passed before the previous authorization expired; consequently, the undersigned **FINDS** that the Parole Commission retains jurisdiction over Brown's case.

### B. *Reasonableness of the Violator Sentence*

Brown argues that his original sentence expired in 2017. Thus, he has been imprisoned long past the conclusion of his original sentence, and his parole violator sentence significantly exceeded the guidelines range. (ECF No. 1 at 2). While this may be true, judicial review of the Parole Commission's decision is limited to whether the Commission complied with the applicable statutes when it imposed the sentence. *Garcia v. Neagle*, 660 F.2d 983, 989 (4th Cir. 1981) (holding that the court may not review the Commission's action when the challenge is to the decision itself, but may review whether the Commission's action was "in violation of the statutory mandate" given it by

Congress.). In Brown's case, the Commission did not exceed its statutory authority in calculating the time remaining on his first federal sentence, or in imposing his parole violator sentence. Had Brown not been convicted of new crimes while on federal parole, his original sentence would have expired in 2017. However, when a parolee has parole revoked for the commission of another offense, the parolee's original sentence stops running on his last release from federal confinement on parole and starts to run again on release from the confinement portion of the new sentence, 28 C.F.R. § 2.47, meaning that the 7,305 days remaining on Brown's first federal sentence stopped running when he was released on parole in 1997 and only started to run again after the completion of his second federal sentence in 2017. The time Brown spent on parole and the time served on his second federal sentence do not count towards his first federal sentence. Regarding the length of Brown's parole violator sentence, the guideline ranges are merely guidelines, and the Commission may render decisions above or below the guidelines range if it finds good cause. 28 C.F.R. § 2.20; *Brown v. U.S. Parole Comm'n*, No. CV 6:18-905-HMH-KFM, 2018 WL 5624160, at *5 (D.S.C. Oct. 3, 2018). "Good cause" includes any substantial reason put forth by the Commission in good faith which is not arbitrary, irrational, unreasonable, irrelevant, or capricious. *Brown*, 2018 WL 5624160, at *5, citing *Solomon v. Elsea*, 676 F.2d 282, 287 (7th Cir. 1982). In ruling on his first habeas petition, the District of South Carolina noted that the Commission determined Brown was at a greater risk of recidivism than his scores indicated, because the crimes he had committed on parole were the same as those underlying his first federal sentence (all were bank robberies). *Id.* A prisoner's demonstrated propensity to repeatedly commit the same offense is a sufficient reason to set a violator sentence above the guidelines range. *Whitaker v. O'Brien*, No. CIVA 7:06CV00048, 2006 WL 2469115, at *3 (W.D. Va. Aug.

6

24, 2006) (citing *Ronning v. United States*, 547 F. Supp. 301, 306 (M.D. Pa. 1982)). The Commission was also concerned by the fact that Brown had not completed any programming while in prison to reduce his risk of recidivism, *Brown*, 2018 WL 5624160, at *5, and program progress is a factor that may be considered in parole and reparole decisions. 28 C.F.R. §§ 2.20–2.21. The undersigned **FINDS** that Brown's parole violator sentence was imposed under the Commission's statutory authority and, therefore, is not grounds for habeas relief.

### C. Right to Compassionate Relief Under the First Step Act

Under the federal parole system, the Bureau of Prisons ("BOP") retained primary authority over motions made to federal court for the reduction of prisoners' sentences. *Turner v. U.S. Parole Comm'n*, 810 F.2d 612, 615 (7th Cir. 1987) ("Section 4205(g) is wholly unlike [provisions in the Parole Act addressing powers of the Parole Commission]; it contains a grant to an entirely different agency (the Bureau) of an entirely different power (motions for sentence reduction). The power is not the direct control of decisions to grant the conditional liberty of parole or to change a sentence; it is merely the power to bring an inmate's sentence before a federal court for review."). At any time, the BOP could move a federal district court to reduce a prisoner's sentence to the time already served, and, if the court granted the BOP's motion, the prisoner would be released. 18 U.S.C. § 4205(g) (repealed 1987). However, a prisoner could not himself move the court for release. *Id.*

After the Sentencing Reform Act of 1984 abolished federal parole, Congress created the new compassionate release statute, 18 U.S.C. § 3582, as a "safety valve" to provide relief to those prisoners whose circumstances had changed such that it would be unjust to require them to serve the entirety of their original sentence. *See United States*

7

*v. Ruvalcaba*, 26 F.4th 14, 26 (1st Cir. 2022). This section "allowed for a reduction of an imposed term of imprisonment based upon a finding of extraordinary and compelling circumstances, except it provided that such a reduction could be made only upon a motion by the Director of the BOP." *See United States v. Budd,* No. CR DKC 73-598, 2021 WL 3857948, at *2 (D. Md. Aug. 30, 2021) (citing 18 U.S.C. § 3582). In 2018, "[t]he requirement that the Director of the BOP file a motion for reduction on the defendant's behalf was amended by Section 603 of the First Step Act, which provided that a defendant may independently request compassionate release from the sentencing court after exhausting his administrative remedies." *Id.* (collecting cases).

However, prisoners who committed offenses prior to November 1, 1987, the effective date of the Sentencing Reform Act, remained subject to the provisions of 18 U.S.C. § 4205(g)—the "old law"—rather than to 18 U.S.C. § 3582, as amended. *Id.* Brown acknowledges in his petition that "old law" prisoners are not entitled to relief under the First Step Act ("FSA"). (ECF No. 1 at 2). Nonetheless, he directs the Court's attention to a press release by members of Congress which supported the emergency release of these prisoners during the COVID-19 pandemic. (*Id.*). That press release was directed towards the BOP and urged it to utilize the FSA's "extraordinary and compelling circumstances" provision to release the 236 remaining "old law" prisoners, who were some of the oldest inmates in the federal system and thus most vulnerable to the COVID-19 virus. (*Id.* at 7).

Notwithstanding the support voiced by the legislators identified in the press release, Congress did not see fit to pass legislation that would allow "old law" prisoners to seek compassionate release on their own behalf, or be released without hearings. Unfortunately for Brown and the other "old law" prisoners, federal courts cannot change otherwise valid statutes. The "old law" prisoners remain bound by 18 U.S.C. § 4205(g),

8

meaning that the courts cannot release these prisoners unless the BOP moves for their release, and, because of the federal separation of powers, the courts cannot force the BOP to do so. Accordingly, the undersigned **FINDS** that this Court cannot provide Brown with the relief he seeks, because his incarceration is not unconstitutional or illegal, and only the BOP can secure his compassionate release by filing a motion requesting same.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Brown's petition for writ of habeas corpus, (ECF No. 1), be **DENIED,** Respondent's motion to dismiss, (ECF No. 9), be **GRANTED,** and that this civil action be **DISMISSED,** with prejudice, and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140

(1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**:  March 23, 2023

Cheryl A. Eifert
United States Magistrate Judge